# CHARLESTON.

WALLACE'S ADM'X v. LIPPS' ADM'R et al.

Submitted June 23, 1899—Decided December 9, 1899.

1. NOTE—Endorsers—Payment—Usury—Defense.

Where a party becomes an accommodation indorser on a negotiable note discounted by the maker at a bank at a greater rate of interest than 6 per cent., and such maker executes a deed of trust upon his real estate to secure indemnity, and save harmless such indorser, who afterwards pays off and takes up said note, including its illegal interest, and a party holding a judgment lien against the lands of said maker files his bill to subject said lands to sale to satisfy the liens thereon, said maker may successfully interpose the plea of usury to the claim of such indorser as to the excess of interest paid to the bank and claimed by him.   (p. 342).

2. NOTICE—Usury—Payment—Defense.

If an indorser have knowledge of the urusy, and voluntarily pay it, he cannot afterwards recover it of his principal, if the latter relies on the plea of usury.   (p. 342).

Appeal from Circuit Court, Greenbrier County.

Bill by R. B. Wallace against John Lipps, O. P. Sydenstricker, and others.  Plaintiff and Lipps and Sydenstricker having died, their administrators were substituted. Decree for complainant, and defendants appeal.

*Affirmed.*

PRESTON & WALLACE, for appellants.

GILMER & GILMER and L. J. WILLIAMS, for appellees.

ENGLISH, JUDGE:

On the first Monday in October, 1896, Wallace filed his bill in equity against John Lipps and others, including the lien creditors of said Lipps, seeking thereby to subject to sale the real estate of Lipps to satisfy a judgment in plaintiff's favor against said John Lipps and Henrv Lipps for the sum of one thousand five hundred and twelve dollars and

thirteen cents, with interest from April 20, 1892, until paid, and sixteen dollars and eighty-five cents, subject to a credit of eight hundred dollars as of December 1, 1892; praying that all the lien creditors of John Lipps might be convened, and the amount and priority of the liens ascertained, and proper accounts taken. The plaintiff and the defendants O. P. Sydenstricker and John Lipps having died, and their deaths having been suggested, the cause was revived in the name of their respective representatives. The administratrix of the plaintiff filed an amended bill, asking that the cause be revived against the heirs at law of said Lipps, and be proceeded in. J. W. Lipps demurred to the bill, and filed his answer, in which he interposed the plea of usury to certain claims asserted by his co-defendants, Alex F. Mathews, H. A. Holt, John A. Preston, F. W. McClung, B. F. Harlow, and O. P. Sydenstricker, which originated from the fact that they had become his accommodation indorsers on various notes, payable in the Bank of Lewisburg, and had been compelled to pay the same. The cause was referred to a commissioner to ascertain and report the real estate owned by said Lipps, the value and rental value thereof, the liens thereon, their amounts, and priorities. In pursuance of reference, the commissioner proceeded to report the real estate owned by Lipps, and, among other liens, ascertained that on March 21, 1895, a deed of trust was executed on one hundred and seventy-three acres of land therein described, and upon two lots in Lewisburg, to secure the following indorsers on certain notes, and on any renewals that might be made of the same, to-wit: O. P. Sydenstricker on four notes drawn by said Lipps, and payable at the Bank of Lewisburg, one for three hundred and seventy-five dollars, dated February 5, 1895, and due June 2, 1895; one for two hundred and seventy-five dollars, dated January 23, and due May 19, 1895; one for four hundred and thirty-five dollars, dated February 16, 1895, due May 17, 1895; and one for six hundred dollars, dated March 9, 1895, due June 7, 1895. H. A. Holt as indorser upon a note for two hundred and fifty dollars, drawn by said Lipps, dated February 6, 1895, due June 2, 1895. T. W. McClung and John A. Preston as joint indorsers on a note drawn by said Lipps for two hun-

dred and twenty dollars, dated February 21, 1895, and due June 16, 1895.    O. P. Sydenstricker and B. F. Harlow as joint indorsers upon three notes drawn by Lipps, one for four hundred and seventy-five dollars, dated February 6, 1895, due May 7, 1895; one for five hundred and fifty dollars, dated February 18, 1895, due May 19, 1895; one for three hundred and seventy-five dollars, dated December 3, 1895, due April 1, 1895,—all of which notes were payable at the Bank of Lewisburg, and on all of them the plea of usury was sustained by the commissioner, and his action confirmed by the court, over the exceptions of said indorsers.    The court, by its decree, directed the sale of real estate of said Lipps, and that the proceeds be applied in pursuance of the findings of said report.    From this decree, said indorsers obtained this appeal.

The appellants rely on the fact that the defendant Lipps, on March 21, 1895, executed a deed of trust on a portion of his real estate to indemnify and save them harmless as indorsers on said notes, and that they had paid in full the notes indorsed by them, respectively, after the execution of said deed of trust.    Now, our statute (Code, c. 96, § 5) provides that "all contracts and assurances made directly or indirectly for the loan or forbearance of money or other thing at a greater rate of interest than six per cent. except where such greater rate is now allowed by law, shall be void as to any excess of interest agreed to be paid above that rate and no further."    The amounts paid by these indorsers were paid voluntarily.    The notes, so far as they called for interest in excess of six per cent., were void under the statute and could not have been enforced either against Lipps or said indorsers.    Either of them could have defeated the collection of such excess by pleading usury, but they elected to pay the same, and now seek to recover it from the estate of Lipps.    The law requires the personal representative to protect his estate by relying upon the plea of usury, which has been done in this case. Does the fact that said deed of trust was executed by Lipps, who conveyed the land "in trust to secure indemnity and save harmless" said indorsers upon the notes therein described, or the renewals of the same, in whole or in part, entitle said indorsers to recover, out of the pro-

ceeds arising from said trust property, the excess of interest over six per cent. paid by them to the Bank of Lewisburg? If this was allowed to be done, there is nothing to prevent the officers of the bank, when making a loan of this character, from requiring the indorsers to secure themselves by deed of trust on the real estate of the party making the paper, and then collecting the excess from the indorsers at maturity of the note, and allowing them to reimburse themselves out of the proceeds of their trust, and the usury law would be defeated. Mullin, J., in delivering the opinion of the court in *Bullard* v. *Raynor*, 30 N. Y. 197, says: "If the usury laws are to be enforced so as to prevent usury, they must not leave a door open through which the usurer can insert his finger. If an opening is left, he will soon have his whole body through." In *Mims* v. *McDowell*, 4 Ga. 182, it was said: "Where the security to a promissory note was indemnified by a mortgage executed by his principal, and after the note became due the security voluntarily gave his own note to the creditor which was accepted by him in full payment of the joint debt, and the joint note given up to the security, held, that the security might foreclose his mortgage against his principal, and collect from him what was actually due on the note in the hands of the original creditor, and that the principal debtor was entitled to make any defense to the note which he could have made against such original creditor." So, also, in *Whitehead* v. *Peck*, 1 Ga. 140, it was held: "If the surety have knowledge of the usury, and voluntarily pay it, he cannot afterwards recover it of his principal." To the same effect, see *Jones* v. *Joyner*, 8 Ga. 562. In view of these authorities, we must hold that the defendant Lipps could successfully interpose the plea of usury to the claims of said indorsers, and thus defeat the excess of interest.

As to Lipps' competency to testify as to the notes indorsed by Sydenstricker after the latter's death, he was certainly competent to state what interest was paid the bank, which he fixes at ten per cent. on the original note, and the same on the renewals thereof. This tends to show what the transaction with the bank was, but he does not even state that Sydenstricker indorsed the notes. In order to identify the notes, counsel, in asking the question,

mentions his name, but nothing is asked as to any transaction or communication directly with him, and I think the testimony was competent.

Was the usury sufficiently proven?  The commissioner so found, and the circuit court approved his finding, and I see nothing to cause us to disturb his finding.

It is also assigned as error that the Wallace judgment, being a lien on all the real estate owned by the defendant Lipps, should have been decreed to be paid off out of the fund arising from the sale of the lands other than those embraced in the deed of trust of March 21, 1895, to secure and indemnify said indorsers.  This assignment, however, appears to be premature, from the fact that, while the decree directs a sale of the land, it does not direct a distribution of the proceeds, or how the money arising from such sale shall be applied.  The decree must be affirmed.

*Affirmed.*